UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| OWNERS INSURANCE COMPANY, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>SOUTHEASTERN HOMES, LLC, )<br>SOUTHEASTERN CUSTOM HOMES, LLC, )<br>SOUTHEASTERN HOMES DEVELOPMENT )<br>GROUP, LLC, NORMAN COOPER, )<br>and JOHN LOUIS WALLER AND JO LYNN )<br>HASS WALLER, Trustees for the Waller Family )<br>Trust, under Trust Agreement Dated August 5, 1999)<br>and JOHN LOUIS WALLER AND JO LYNN )<br>WALLER, individually, )<br>)<br>Defendants. )<br>_____) | C.A. NO.: 2:11-cv-490-PMD<br><br>**COMPLAINT**<br>**(non-jury)** |

COMES NOW, the Plaintiff above named, Owners Insurance Company, ("Owners"), complaining of the Defendants above named, alleges and states that:

1.  Owners is a corporation organized under the laws of Ohio qualified to do business in South Carolina who was, at all times referred to herein, having its principal place of business in the state of Ohio.

2.  The Defendants, Southeastern Homes, LLC, Southeastern Custom Homes, LLC, Southeastern Homes Development Group, LLC, and Norman Cooper ("Southeastern"), are, all upon information and belief, residents and citizens of South Carolina, and the corporations are a South Carolina corporation with it's principal place of business in South Carolina.

3.  The Defendants, John Louis Waller and Jo Lynn Waller, individually and as Trustees

of the Waller Family Trust, under Trust Agreement Dated August 5, 1999 ("Waller"), are, upon information and belief, South Carolina citizens and residents which own and or serve as the trustee for property located in Charleston County.

4.      No affirmative relief is sought from or against any of the entities and/or individuals identified in paragraph 3 at this time and these individuals/entities are being joined in this action by virtue of the fact they may have an interest in the outcome of this litigation. If they do not, Plaintiff will agree to dismiss them from this suit, but they will be bound by the outcome of the litigation.

5.      Upon information and belief, this Court has both personal and subject matter jurisdiction over this matter and venue is proper in the Charleston Division of the United States District Court for the District of South Carolina pursuant to 28 U.S.C. § 1332 as the action is between citizens of different states and the amount in controversy is in excess of $75,000, exclusive of costs and interest. Further, South Carolina substantive law applies to this dispute as the contract of insurance at issue in this matter insure lives, property, or interest in South Carolina.

6.      This matter involves a declaratory judgment action to determine whether coverage exists pursuant to a commercial general liability ("CGL") contract of insurance entered into between Owners and Southeastern. The policy number is 994616-36066859-01 and was to provide coverage from February 19, 2001, until February 19, 2003 (hereinafter "the Policy"). The Policy is actually two consecutive policies of insurance each having a one year term. The second term has "02" at end of its policy number, but the remaining digits remain the same. The Policies had products completed operations coverage limits of $1,000,000 per occurrence and $2,000,000 aggregate limit. A copy of the policy is attached as Exhibit "A". The terms and conditions of the two policies are substantially similar.

7.     This action is brought pursuant to the Federal Declaratory Judgment Act, codified at 28 U.S.C. § 2201 (Supp. 2002) and seeks a declaration that the policy does not provide liability insurance coverage to Southeastern under the Policy described in paragraph 6, *supra*. Coverage does not exist under the Policies because an "occurrence" and "property damage" may not be present as defined by the Policies, as well as pursuant to the Exclusions (j)(k)(l)and (m) in the Policies, as will be set forth with more particularity *infra*, as well as any other provisions of the Policies that may be discovered during the pendency of this litigation. Finally, as a result of the South Carolina Supreme Court's opinion in <u>Crossmann Communities of North Carolina, Inc. v. Harleysville Mut. Ins. Co.</u>, Op. No. 26909 (Jan. 7, 2011), all or some of the damages alleged in the underlying lawsuit for which relief is sought are outside the scope of any policy of insurance alleged to have been issued by Owners as there is no element of fortuity and, in reality, the claims are for defective workmanship. This action seeks to declare that no obligation of defense exists under these policies of insurance as there is no obligation of indemnity. In the event coverage does exist, Auto-Owners also seeks a declaration regarding allocation of indemnity, if any indemnity is owed, among multiple insurers, and the Insureds for any uninsured time.

## FACTUAL ALLEGATIONS

8.     On or about November 12, 2008, an amended complaint was filed in the South Carolina Court of Common Pleas for the Ninth Judicial Circuit, Charleston County, captioned *Waller et al v. Southeastern Homes, LLC, et al,* C.A. No.: 2008-CP-10-4241. Southeastern is a defendant in the underlying action. The case is still pending. A copy of said suit is attached hereto as Exhibit "B" and incorporated herein by reference and is hereinafter referred to as "the Lawsuit."

9.     In sum, the lawsuit seeks unspecified damages arising out of the construction of a

home located in Mt. Pleasant, South Carolina. According to the Lawsuit, the construction was begun in 2001, completed in 2002, and purchased by Waller on March 1, 2002. Upon information and belief, the home was substantially completed on February 6, 2002, a copy of the certificate of occupancy is attached as Exhibit "C".

10.     The Lawsuit alleges several causes of action against Southeastern, to wit: (1) breach of contract; (2) negligence; (3) breach of warranties; (4) negligent misrepresentation; and (5) unfair trade practices. A motion to amend the complaint was filed on January 19, 2011. Upon information and belief, the sole basis for proposed amendment is to address the holding of the Crossman decision. A copy of the motion is attached as Exhibit "D".

11.     The Policy issued to Southeastern do not include or constitute a performance bond covering Southeastern's work.

12.     The Policy is a contract between Owners and Southeastern. In order for coverage to exist, coverage must first be triggered.

13.     As a result of the Lawsuit described above, Southeastern notified Owners of the action via loss notices and/or direct communications. The loss was purported to have occurred during the period of time wherein Owners provided insurance coverage to Southeastern.

14.     Owners has provided a defense to the Lawsuit on behalf of Southeastern pursuant to a reservation of rights. The Lawsuit has not been settled and is scheduled to go to trial. Waller is seeking substantial actual and punitive damages. The amount in controversy in the Lawsuit identified above exceeds the jurisdictional amount of $75,000.00.

15.     Upon information and belief, the allegations of the Waller's are for defective workmanship related to the construction of a residential property. Southeastern was the general

contractor and/or developer of the property. Further, if these allegations are true, then these defects were not fortuitous as defined by the South Carolina Supreme Court.

    16.    The Policy issued to Southeastern contains the following provisions which are, among other provisions of the Policy, relevant to this action:

    SECTION I - COVERAGES

    COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

    1.    Insuring Agreement

        a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
            (1)    The amount we will pay for damages is limited as described in the Limits of Insurance (Section III); and
            (2)    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

        b.    This insurance applies to "bodily injury" and "property damages" only if:
            (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
            (2)    The "bodily injury" or "property damage" occurs during the policy period.

    SECTION V -- DEFINITIONS:

    5.    "Impaired Property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

      a.      it incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

      b.      You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

      a.      the repair, replacement, adjustment, or removal of "your product" or "your work";

      b.      your fulfilling the terms of the contract or agreement.

9.   "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

11. a   "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned.

    b   "Your work" will be deemed completed at the earliest of the following times:

(1) When all work called for in your contract has been completed.

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

12.   "Property Damage" means:

      a.      Physical injury to tangible property, including all resulting loss of use of that property . . . .; or

      b.      Loss of use of tangible property that is not physically injured.

2. Exclusions

This insurance does not apply to:

j. "Property damage" to:

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

k. "Property damage" to "your product" arising out of it or any part of it.

l. "Property damage" to "your work" arising out of it or any part of it and including in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on our behalf by a subcontractor.

m. "Property damage" to "impaired property" or property that has not been physically injured arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

17. The Lawsuit alleges various acts and omissions by several parties, including Southeastern, all of which arise out of the construction of a residential home. The allegations include the following:  "Plaintiffs purchased the home on or about March 1, 2002, and recently became aware of defects and deficiencies that include . . . installation of the brick veneer, flashings, roofing, flooring and mechanical systems. That as a result of the various defects and deficiencies relative to the design, development and construction of this home, the Plaintiffs have been damaged

and they will be required to expend large sums of money to repair, correct and replace various parts and components of their residence and reconstruct major portions of their residence, have been exposed to and will be subject to loss of use, enjoyment and depreciation of the value of their property." See Compl. at ¶¶ 12-14; 18-19; 22; 31-32; 35-36.  The allegations in the Complaint all surround a failure to install materials correctly and/or a violation of an industry standard in connection with the construction of a single family dwelling.

19.    Upon information and belief, the Waller's allegations are supported by expert testimony and reports of Bob Sisinroy and Lenny Greene who produced reports on August 6, 2007, November 14, 2010, and May 23, 2007, respectively.  All these reports call into question the workmanship of Southeastern and will, upon information and belief, for a portion of the proof by Waller for the allegations against Southeastern.

19.    As set forth above, Southeastern tendered the Lawsuit to Owners to provide a defense and indemnity of the claims presented in the Lawsuit, which Owners has done while reserving its rights under the Policy.  Owners now seeks a declaratory judgment that it has no duty under the Policy to defend or to indemnify Southeastern.

20.    Waller's claims are all grounded on allegations of conduct by Southeastern in the workmanship, design, methods, and procedures used in the construction of home, which was begun, but not completed during the Owners policy period.  Under the insuring agreement (paragraph 1), the Policies cover only "property damage" which is caused by an "occurrence."  "Occurrence" is defined in the Policies as an "accident" (Section V, paragraph 12). The "occurrence" must take place and also the "property damage" must take place during the policy period.  As there is no "accident"

or element of "fortuity" as established in Crossmann there can be no "occurrence". In addition, any claim that does qualify as "property damage" caused by an "occurrence" must occur within the policy period in order for there to be coverage

21.     The claims also constitute claims of damage from defective or faulty workmanship in the construction of home by Southeastern. The damage complained of constitutes damage to Southeastern's "product" and "work," as defined in Section V. The policy provisions found in Section I, paragraph 2, subsections (j)(5)(6) exclude coverage for property damage, damage to Southeastern's product, damage to it's work, faulty workmanship and because products completed operations coverage is not applicable the exception to (j)(6) is not applicable over portions of the alleged loss.

22     Owners is informed that a justiciable controversy exists between the parties, and that the parties named as defendants have or may claim an interest in the subject matter of this litigation, in that the disposition of the insurance policies in this matter will affect the rights and liabilities of the defendants in regard to their own exposure to damages which are the subject of the underlying lawsuit. Owners prays that the Court inquire into the dispute between the parties, review the Policy and applicable facts and law, and issue a Declaratory Judgment as to the rights and responsibilities of the parties under the policies in question.

23.     Owners is informed and believes that the policy, in fact, does not afford coverage to Southeastern. Owners, therefore, brings this action seeking a declaration from this Honorable Court that it is under no duty or obligation, pursuant to the Policy, to defend and/or indemnify Southeastern for any matters relating to the Lawsuit, or any judgment arising therefrom. In the event, there is an

occurrence and there is no exclusion to coverage, then the Plaintiff seeks a determination of the "time on risk" for this loss and an apportionment of what portion of any judgment (if rendered) must be indemnified by Owners.

### FOR A FIRST CAUSE OF ACTION
### (Declaratory Judgment Action)

24.     Owners re-alleges and re-avers the allegations contained in paragraphs 1 through 23 as if fully set forth herein.

25.     Owners is informed and believes that this Honorable Court has the power pursuant to 28 U.S.C. § 2201 to decide and determine the issues presented in this action and may enter a final judgment with respect to these issues.

26.     Upon information and belief, no coverage exists under the Policy for the acts and/or omissions complained of by Waller against Southeastern in the Lawsuit, and Owners is therefore entitled to a an Order and judgment declaring that Owners is under no duty or obligation, pursuant to the Policy, to defend and/or indemnify Southeastern for any matter whatsoever relating to the Lawsuit, or any judgment arising therefrom.

27.     Owners also alleges that there is but a limited amount of available coverage based upon principals of allocation. In this instance, if there are multiple policies or periods of time which are triggered, then there may be portions of time that is uninsured. Thus, Owners seeks a declaration of who bears the responsibility to indemnify Southeastern in instances where damages have occurred, but there is no insurance to cover the loss.

WHEREFORE, Owners prays that this Honorable Court issue an Order declaring that it is under no obligation or duty to defend and/or indemnify Southeastern in any manner regarding the

Lawsuit, or any judgment arising therefrom, and for such other and further relief as this Honorable Court may deem just and proper.

    Dated the   1st   day of March, 2011.

                             Respectfully Submitted;

                             ELMORE & WALL, P.A.

                             s/ Morgan S. Templeton
                             Morgan S. Templeton (Fed ID # 7187)
                             145 King Street, Suite 302
                             Post Office Box 1200
                             Charleston, South Carolina 29402
                             (843)329-9500
                             Attorneys for Plaintiff